Chief Judge Fuld.
General Motors (GM) had a contract with United Automobile Workers (UAW), representing the workers in the 130 GM plants across the country, which expired on August 31,1964. Despite negotiations between the parties on local and national levels, no agreement could be reached on a new contract, and a national strike was called. It began on September 25 and continued until November 10. Involved on the present appeals are GM employees at five New York plants who claim and were awarded State unemployment benefits for various periods during the strike. GM opposes their grant on the ground that they are barred by section 592 (subd. 1) of the Labor Law which suspends an employee’s right to such benefits for seven weeks if his unemployment arises from a ‘ strike, lockout, or other industrial controversy in the establishment in which he was employed”'. (Italics supplied.) The claimants consist of two groups: (1) those employed at the Chevrolet assembly plant at Tonawanda and (2) those employed at the other four GM plants, which make automobile parts. It is helpful to discuss the facts as to each group separately.
When the UAW called the nationwide strike on September 25, picket lines went up around the plant at Tonawanda. Although all of the national issues involved were tentatively settled by October 5, local issues at the Tonawanda plant, and at most of the other struck plants, remained in dispute and the strike persisted. The local differences between the union and GM at the Tonawanda facility were settled on October 26 — at which time the picketing terminated[1] — and, although steps were immediately taken to ready the plant for production, it did not return to full operation until November 2. The Tonawanda employees thereupon filed claims for unemployment benefits for the period from October 26 to November 2.
Forty-one other plants made parts for other automobile manufacturers, as well as for GM, and no strike occurred at those plants. This reflected a stated union policy to confine the dispute to the UAW and GM and thereby increase pressure on the latter by allowing its competitors to obtain the parts necessary to produce their cars. Among the 41 parts plants mentioned were four in this State, located in Buffalo, Lockport, Rochester and *271 Syracuse, and the employees at those facilities continued to work.[2] However, despite the fact that an attempt was made to operate them at normal production, it soon became evident that this was impossible. Since the strike had closed the GM assembly plants, there was no place to which the great bulk of the output of the parts plants could be shipped. This necessitated curtailing production at those plants and laying off the people working there. They thereupon filed claims for unemployment benefits for the period between layoff and recall.
The Industrial Commissioner granted the requested benefits to all of the claimants, and his decision was upheld, in turn, by the Unemployment Insurance Referee and the Appeal Board. Following the Appellate Division’s unanimous affirmance of the board’s determination, G-M appealed to our court, as of right, on asserted constitutional grounds. Its constitutional argument, briefly stated, is that sanctioning the State’s payment of benefits to the claimants would do violence to the pervasive Federal scheme of labor regulation and, by that token, offend against the Supremacy Clause of the United States Constitution. More particularly, GM maintains that Congress has “pre-empted” the field of labor-management relations in industries engaged in commerce and, consequently, that, by paying compensation in a case such as this, the State “ interferes with the ® ° ° federally mandated freedom [of management and labor] to mutually exert economic pressure in an atmosphere free of all governmental support ’ ’.[3]
*272 In order to ascertain if the question posed is “ directly involved ” in the present cases (CPLR 5601, subd. [b], par. 1), we look to the situation as it existed at the several plants involved to determine whether, in fact, the payment of unemployment benefits interferes with GM’s ability to bring “ economic pressure ” to bear on the union. Only if this is so would it be necessary to decide the constitutional contention advanced as a basis for the appeal as of right, namely, that the alleged “ interference ” improperly thrust the State into a federally pre-empted area.
Certainly, no such question is raised or presented by the decision below that the Chevrolet-Tonawanda employees are entitled to benefits for the period which was necessary to get the plant back into full production after the local issues had been settled. A strike ends when the workers stop striking and not at some later date when, because of the employer’s method of doing business, it is again ready for full production. (See Matter of George [Catherwood], 14 N Y 2d 234, supra; Matter of Acquisto [Catherwood], 25 A D 2d 326, mot. for lv. to app. den. 18 N Y 2d 577.) It follows, therefore, that the unemployment at Tonawanda, after the local issues were settled, was occasioned not by GM’s labor relations policy in connection with a strike but by the manufacturing conditions that there existed.
It is equally clear that the unemployment at the parts plants was not the result of a labor-management relations decision. Although GM recognizes that there was no strike at those locations, it contends that there had been a ‘ ‘ lockout ’ ’ or ‘ ‘ industrial controversy. ’ ’
The claim of lockout ignores the fact that the employees were laid off not because the employer utilized an economic sanction to prevent the employees from working but because of lack of work. “ A lockout ”, it has been aptly said, “ is the refusal by an employer to furnish available work to his regular employees. It is apparent that the considerations which fault an employer for refusing to furnish available work are quite different from those which would prohibit him from laying off workers for whom there is no work.” (American Ship Bldg. v. Labor Bd., 380 U. S. 300, 321 [per White, J., concurring]; see, also, Baird, Lockout Law, 38 Geo. Wash. L. Rev. 396, 397; Rosen, The Evolution of the Lockout, 4 Suffolk L. Rev. 267; Stokes, Nonstoppage *273 Strikes: Rationale and Review, 20 Lab. L. J. 79.) In other words, “ a temporary withholding of the right to work due to lack of work is commonly understood to be a lay-off and not a lockout.” (Rosen, The Evolution of the Lockout, 4 Suffolk L. Rev. 267.) Thus, it is quite obvious that the employer, far from resorting to any so-called economic weapon, sent the men home only because it was unable to go forward with its work.
Nor, as already demonstrated, was there a strike or any other industrial controversy at the parts plants which led to the unemployment. It may be true that were negotiations taking place there with regard to local issues but it was not those negotiations, or any failure to come to agreement, which occasioned the layoff of employees. Rather, since the GM assembly plants — the primary users of the parts manufactured—were on strike, the employer decided to send the men home. This decision, based solely on the exigencies of doing business, was in no sense a labor relations tactic.
In sum, none of the claimants before us were prevented from working by the employer, by lockout or other device, in order to bring ‘ ‘ economic pressure ’ ’ to bear on the union in connection with the national strike. This being so, the present records do not raise the question whether the payment of unemployment benefits to the employees would interfere with GM’s national bargaining position and thereby improperly intrude into a federally protected sphere. Consequently, the question which GM raises to support an appeal as of right is not involved in the cases, and the respondents’ motion to dismiss the appeals — initially denied with leave to renew on the argument (19 N Y 2d 690) —must be granted.
The appeal in each case .should be dismissed, with costs, on the ground that no substantial constitutional question is directly involved.
Judges Burke, Scileppi, Bergan, Breitel and Jasen concur; Judge Gibson taking no part.
In each case: Appeal dismissed, with costs.

. The national strike, as noted above, continued until November 10, on which date the essential agreement of settlement was signed.

. The claimants in Matter of Weis, other than the Chevrolet-Tonaw&nda employees discussed above, are employed in the Buffalo, Lockport and Rochester plants. The claimants in Matter of Jones are employed in the Syracuse plant.

. The basis for this asserted intrusion into the federal sphere is the Appellate Division’s holding — consistent with our decision in Matter of George (Catherwood) (14 N Y 2d 234)—that this court’s narrow construction of the statute barring benefits to workers whose unemployment is brought on because of a labor controversy “ in the establishment in which he was employed ” (Labor Law, § 592, subd. 1)—equating “establishment” with “‘place’ rather than ‘ enterprise ’ ” (Matter of Sierant [Catherwood—Gen. Mills], 24 N Y 2d 675, 679; see Matter of George [Catherwood], 14 N Y 2d 234, 239, supra; Matter of Ferrara [Catherwood], 10 N Y 2d 1, 8)—applies even if the “ establishment ” is part of a “ highly integrated nationwide industry ” involved in a national strike. (Matter of George [Catherwood], 14 N Y 2d 234, 239, supra.)